# MEMBERSHIP PLEDGE AGREEMENT

**THIS MEMBERSHIP PLEDGE AGREEMENT** (hereinafter "Agreement") is made this *19th* day of November, 2007 by and between John M. Salov (hereinafter "Pledgor"), and Oakville Tower Holdings, LLC, a Florida limited liability company (hereinafter "Secured Party"), as follows:

**WHEREAS,** Pledgor owns 100% of the limited liability company membership interest (the "Membership Interest") in Digital TV of Orlando, LLC, a Florida limited liability company (the "Company"); and

**WHEREAS,** Company entered into that certain Lease Agreement dated November *19th*, 2007 with Secured Party (the "Lease Agreement") whereby Company leased the Leased Premises (as defined in the Lease Agreement) from Secured Party on terms and conditions as more particularly set forth therein;

**WHEREAS,** Pledgor, as owner of 100% of the equity interest of Company, has agreed to secure the payment and performance of Company's obligations under the Lease Agreement by executing this Agreement.

**NOW, THEREFORE,** the parties enter into this Agreement upon the following terms and conditions:

1. **Grant of Security Interest.** For value received, Pledgor hereby mortgages, pledges, assigns, transfers, sets over and delivers to the Secured Party, and hereby grants to the Secured Party a security interest in, all of Pledgor's right, title and interest in and to the Membership Interest together with the proceeds thereof, including but not limited to Pledgor's rights to receive such proceeds, in the form of cash or property of whatever kind or nature, whether now due or hereafter distributed, or to be distributed, to Pledgor as a member in the Company, including, without limitation, (i) any gains or profits paid out or to be paid out to or on behalf or for the benefit of Pledgor, whether derived from the day-to-day operations of the Company or the sale of Company assets, (ii) any and all liquidating distribution of assets of the Company, and (iii) the purchase price paid by, or any other consideration received from, any person or entity for Pledgor's interest in the Company. The Membership Interest and all of the proceeds therefrom are sometimes collectively referred to herein as the "Pledged Interests". Simultaneously with the execution of this Agreement, the parties shall cause to be filed, at the expense of Pledgor, a UCC-1 financing statement or statements with respect to the Pledged Interests naming only the Pledgor as a debtor, as shall be reasonably necessary to perfect or continue perfection of the security interest of the Secured Party therein.

2. **Indebtedness Secured.** This Agreement and the security interest it grants in the Pledged Interests secure the Pledgor's obligations for payment and performance under the Lease Agreement.

TAMP_718810_3



3. **Pledgor's Warranties.** Pledgor represents and warrants, and shall be deemed continuously to represent and warrant so long as Pledgor's obligations secured by this Agreement remain outstanding, that:

(a) Except for the security interest granted to the Secured Party by this Agreement, there has been no other assignment, pledge, transfer, hypothecation, encumbrance or other conveyance of the Pledged Interests;

(b) Pledgor is the sole owner and holder of the Membership Interest, has good, marketable and legal title to the Membership Interest, not subject to any lien or other encumbrance securing any indebtedness except the pledge executed in favor of the Secured Party hereunder;

(c) Pledgor does not need the consent or authorization of any other member or the Company to execute this Agreement or grant a security interest in the Pledged Interest; and

(d) Pledgor has full power and right to enter into this Agreement and to make the assignment contemplated hereby. This Agreement is the valid and binding obligation of Pledgor, enforceable against Pledgor in accordance with its terms. The assignment contemplated hereby is not in violation of the terms of any operating agreement of the Company or any other agreement to which Pledgor is a party or by which Pledgor may by bound or affected, Pledgor will warrant and defend its title to the Pledged Interests and the security interest therein created therein by this assignment against all claims of all persons, and will maintain and preserve such lien and security interest.

4. **Pledgor's Covenants.** So long as any obligations of Pledgor secured by this Agreement remain outstanding, Pledgor covenants that:

(a) Pledgor will defend the Pledged Interests against the claims and demands of all other parties;

(b) Pledgor will keep the Pledged Interests free of all other security interests and encumbrances except as set forth herein;

(c) Pledgor will not attempt to sell, transfer, assign, pledge, hypothecate, encumber, deliver or otherwise dispose of the Pledged Interests or any interest therein to any person or entity and, in the event of any sale or other disposition, all obligations secured by this Agreement will become immediately due and payable; and

(d) Pledgor will pay all taxes, assessments, just debts and expenses of any kind that, if unpaid, would impair or imperil the security interest of Secured Party.

5. **Retention of Voting Rights.** Notwithstanding this Agreement, so long as no default exists hereunder or under the Lease Agreement, the Membership Interest shall at all times be voted by Pledgor and neither the Secured Party nor any assignee of the Secured Party shall make any attempt to vote the Membership Interest prior to any default. Notwithstanding the foregoing, Pledgor agrees to exercise its voting rights to elect a representative of Secured Party to serve as a co-manager of the Company.

6. **Company Distributions.** So long as no default exists hereunder or under the Lease Agreement, Assignor shall be entitled to retain as its sole property, any normal periodic distributions of profits derived from the day-to-day operations of the Company made by the Company with respect to the Membership Interest. On the other hand, regardless of whether a default exists hereunder at the time and, except as provided otherwise in this Section 6, any and all distributions which the Company may or is required to make to Assignor other than normal periodic distributions of operating profits, including, without limitation, special or dissolution distributions arising as a result of the sale, other disposition, financing or refinancing of some or all of the assets of the Company, shall be delivered by the Company to Secured Party, to be held subject to the security interest in favor of Secured Party granted hereunder until the release of such security interest. Notwithstanding any provision of this Section 6 to the contrary, the parties agree that the preceding sentence shall not apply to that portion of any such distribution equal to the amount necessary to satisfy Assignor's federal income tax liability resulting from the "pass through" of taxable income from the Company to Assignor with respect to the transaction giving rise to the distribution, which amount shall be distributed from the Company to Assignor for the purposes of allowing the Assignor to satisfy such accompanying federal income tax liability.

7. **Defaults and Remedies.**

(a) Each of the following shall constitute an event of default ("Event of Default") hereunder:

(i) The sale, transfer, assignment, pledge, hypothecation, or other disposition or further encumbrance by Pledgor or any other person or by operation of law of all or any part of the Pledged Interests;

(ii) The occurrence of a default or event of default under the Lease Agreement; and

(iii) The Company (i) files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or (ii) seeks or consents to or acquiesces in the appointment of any trustee, receiver or similar officer of the Company or of all or any substantial part of the property of the Company; or all or a substantial part of the assets of the Company are attached, seized, subjected to a writ or distress warrant or are levied upon;

(iv) The commencement of any involuntary petition in bankruptcy against the Company or the institution against the Company of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of the Company;

3

(v)     The Company electing to disavow the Lease Agreement in any bankruptcy proceeding.

(b)     **Remedies.** Upon the happening of any Event of Default, or at any time thereafter, such default not having been previously cured, the Secured Party, at its option, without notice or demand, may take such action as it deems advisable to protect and enforce its rights against Pledgor and in and to the Pledged Interests, including but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Secured Party may determine, in its sole discretion, without impairing or otherwise affecting the rights and remedies of the Secured Party under this Agreement:

(i)     Declare any or all of the obligations secured hereby to be immediately due and payable, and the Secured Party may avail itself of all rights and remedies granted a Secured Party under the Florida Uniform Commercial Code or other applicable law including, without limiting the generality of the foregoing, the right to sell, assign and deliver the Membership Interest or any part thereof at public or private sale, at such place as the Secured Party may deem best. At such sale, the Secured Party shall have the right to purchase the Membership Interest or any part thereof. Any such sale shall be subject to the terms, conditions and restrictions set forth in the operating agreement of the Company, if any, and the purchaser will accept and comply with the terms of such operating agreement, if any, which restrictions, as to prospective bidders and purchasers, the parties agree are commercially reasonable.

(ii)     exercise any additional rights granted to the Secured Party herein or in any other agreement now or hereafter in effect between Pledgor and the Secured Party or otherwise granted by law or equity.

(c)     **Application of Proceeds.** Upon any disposition of the Pledged Interests by the Secured Party pursuant to this Paragraph 7, Secured Party shall first deduct from the proceeds of such sale all costs and expenses of the sale, and then deduct all amounts then due and owing to Secured Party pursuant to the Lease Agreement secured hereby. Any remaining balance of the proceeds from such sale after deducting the costs and expenses of the sale and the amounts due and owing to Secured Party shall be remitted to Pledgor. In the event that the proceeds of any such sale are not sufficient to pay the amount due on the obligations secured hereby and the costs of collection, Pledgor shall be and remain liable for any deficiency.

8.     **Forbearance.** Any forbearance or failure or delay by the Secured Party in exercising any right, power or remedy hereunder and any single or partial exercise of such right, power or remedy shall not be deemed to be a waiver of such right, power or remedy of the Secured Party, all of which shall continue in full force and effect until such right, power or remedy is specifically waived by an instrument in writing, executed by the Secured Party.

9.     **Nonassumption of Duties.** Notwithstanding anything to the contrary, the Secured Party does not assume any of Pledgor's duties or obligations to the Company or otherwise and the Secured Party shall not be liable therefor and this Agreement shall not be construed to operate as a delegation or assignment by Pledgor of such duties and/or obligations or as an assumption by the Secured Party of such duties and/or obligations.

10. **Term of Agreement.** This is a continuing Agreement, notwithstanding the dissolution or bankruptcy of Pledgor, or any other event or proceeding affecting Pledgor.

11. **Attorneys' Fees.** The prevailing party in any action brought with respect to or to enforce any right or remedy under this Agreement shall be entitled to recover from the other party or parties all reasonable costs and expenses of any nature whatsoever incurred by the prevailing party in connection with such action, including without limitation attorneys' fees and prejudgment interest.

12. **Successors and Assigns.** All rights of the Secured Party shall inure to the benefit of its heirs, personal representatives, successors and assigns and all obligations of Pledgor shall bind the successors and assigns or Pledgor.

13. **Governing Law.** This Agreement and the legality, validity of the performance of the terms hereof shall be governed by and enforced, determined and construed in all respects in accordance with the laws of the State of Florida.

14. **Severability of Provisions.** This Agreement and all of its terms and provisions shall be binding upon the parties hereto and the heirs, personal representatives, successors, transferees and assigns of each of the parties hereto. In the event any portion of this Agreement is held invalid, the remaining portion shall remain in full force and effect, as if that invalid portion had never been a part hereof.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals the day and year first above written.

**PLEDGOR:**

By: _____
John M. Salov

Address: 180 W. Michigan Ave
Jackson, MI 49201

**SECURED PARTY:**

Oakville Tower Holdings, LLC, a Florida limited liability company

By: _____
Print Name: Dale A. West

Address:  400 N. Ashley Drive
Suite 3010
Tampa, FL 33602