## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made as of November, 2007 ("Effective Date"), by and among Digital TV of Orlando, LLC, a Florida limited liability company (the "Debtor"), and Oakville Tower Holdings, LLC, a Florida limited liability company (the "Secured Party").

### RECITALS

The Secured Party and Debtor have entered into that certain Lease Agreement for Station WTWD-LP dated of even date herewith (as amended or modified from time to time, the "Lease Agreement"), pursuant to which the Secured Party has agreed to lease to Debtor that certain Leased Premises (as defined in the Lease Agreement) upon the condition that the Debtor execute and deliver this Agreement to the Secured Party.

ACCORDINGLY, in consideration of the execution of the Lease Agreement and the mutual covenants herein contained and in order to induce the Secured Party to execute the Lease Agreement and to purchase the Additional Equipment (as such term is defined in the Lease Agreement), the parties hereto agree as follows:

1.  Definitions.

    (a)  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Uniform Commercial Code in effect in the State of Florida or any other jurisdiction applicable to the affected Collateral (as hereinafter defined) (the "UCC") on the date hereof are used herein as so defined: Accessions, Accounts, Chattel Paper, Commercial Tort Claims, Commingled Goods, Consumer Goods, Control, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Farm Products, Financial Assets, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Manufactured Homes, Payment Intangible, Promissory Note, Proceeds, Software, Supporting Obligation, and Tangible Chattel Paper.

    (b)  In addition, the following terms shall have the following meanings:

    "Collateral" has the meaning set forth in Section 2 hereof.

    "Control Collateral" means any Collateral consisting of any Instrument, Investment Property, Deposit Accounts (each as defined in the Uniform Commercial Code), cash and any other Collateral as to which a Lien shall or may be perfected through possession or control by the secured party or any agent therefor.

    "Secured Party" has the meaning set forth in the Preamble hereof.

    "Secured Obligations" means all of the Obligations now existing or hereafter arising pursuant to the Lease Agreement, owing from any Debtor to Secured Party, howsoever evidenced, created, incurred or acquired, whether primary, secondary, direct, contingent, or joint and several, including, without limitation, all obligations and liabilities incurred in connection with collecting and enforcing the foregoing.

TAMP_718555.3



EXHIBIT B

2. <u>Grants of Security Interests in the Collateral</u>.

(i) To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, of the Secured Obligations, Debtor hereby grants to Secured Party a continuing security interest in, and a right to set off against, any and all right, title and interest of Debtor in and to the following personal property of Debtor, whether now owned or existing or owned, acquired, or arising hereafter:

    (a) all Accessions;

    (b) all Accounts, and all Chattel Paper and Instruments issued in connection with such Accounts;

    (c) all cash and Cash Equivalents;

    (d) all Chattel Paper (not including Chattel Paper issued in connection with an Account);

    (e) all Commercial Tort Claims of the Debtor;

    (f) all Deposit Accounts;

    (g) all Documents;

    (h) all Equipment;

    (i) all Fixtures;

    (j) all General Intangibles (including all contract rights and all patents, trademarks (including the goodwill associated therewith) and copyrights and applications for any of the foregoing);

    (k) all Instruments;

    (l) all Inventory;

    (m) all Investment Property;

    (n) all Letter-of-Credit Rights;

    (o) all Software;

    (p) all Supporting Obligations; and

    (q) Proceeds of any and all of the foregoing;

(the assets described in the preceding subsections (a) through (q) shall hereinafter be referred to as the "Collateral").

Debtor and Secured Party hereby acknowledge and agree that the security interests created hereby in the Collateral constitute continuing collateral security for all of the Obligations whether now existing or hereafter arising and are not to be construed as an assignment of any copyrights, patents, trademarks or any licenses therefor.

3. <u>Representations and Warranties</u>. Debtor hereby represents and warrants to the Secured Party that until such time as the Secured Obligations have been satisfied in full and terminated:

(a) <u>Ownership</u>. Debtor is the legal and beneficial owner of its Collateral and has the right to pledge, sell, assign or transfer the same.

(b) <u>Chief Executive Office; Books & Records; Legal Name; State of Organization</u>. As of the Effective Date, the Debtor's chief executive office and principal place of business are (and for the prior four months have been) located at 180 W. Michigan Avenue, Jackson, Michigan 49201, and, as of the Effective Date, Debtor keeps its books and records at such location. As of the Effective Date, each Debtor's exact legal name is as shown in this Agreement and its state of organization is (and for the prior four months has been) as shown on the signature pages of this Agreement. As of the Effective Date, no Debtor has in the past four months changed its name, been party to a merger, consolidation or other change in structure or used any tradename.

(c) <u>Security Interest/Priority</u>. This Agreement creates a valid security interest in favor of the Secured Party in the applicable Collateral of such Debtor and, when properly perfected by filing, shall constitute a valid perfected security interest in such Collateral, to the extent that a security interest in such collateral can be perfected by filing under the UCC, free and clear of all Liens. With respect to any Collateral consisting of Deposit Accounts, upon execution and delivery by each applicable Debtor, each applicable depository bank and the Secured Party of a deposit account control agreement (the "Deposit Account Control Agreement") in form and substance reasonably satisfactory to the Secured Party, granting Control to the Secured Party over such Collateral, the Secured Party shall have a first perfected security interest in such Collateral.

(d) <u>Types of Collateral</u>. None of the Collateral consists of, or is the Proceeds of, (i) As-Extracted Collateral, (ii) Consumer Goods, (iii) Farm Products, (iv) Manufactured Homes or (v) standing timber that is to be cut and removed under a conveyance or contract for sale.

(e) <u>Accounts</u>. (i) Each Account of the Debtor and the papers and documents relating thereto are genuine and in all material respects what they purport to be, (ii) each Account arises out of (A) a bona fide sale of goods sold and delivered by such Debtor (or is in the process of being delivered) or (B) services theretofore actually rendered or to be rendered by such Debtor to the account debtor named therein, (iii) no material Account of an Debtor is evidenced by any Instrument or Chattel Paper unless such Instrument or Chattel Paper has been theretofore endorsed over and delivered to, or submitted to the control of the Secured Party and (iv) no surety bond was required or given in connection with any Account of an Debtor or the contracts

3

or purchase orders out of which they arose and the right to receive payment under each Account is assignable.

(f) <u>Consents</u>. Except for (i) the filing or recording of UCC financing statements, (ii) obtaining control to perfect the Liens created by this Agreement (to the extent required hereunder, (iii) consents, authorizations, filings or other actions or approvals required under applicable securities and insurance Laws, and (iv) consents, authorizations, filings or other actions which have been obtained or made, no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or Governmental Authority and no consent of any other Person (including, without limitation, any stockholder, member or creditor of Debtor), is required for (A) the grant by Debtor of the security interest in the Collateral granted hereby or for the execution, delivery or performance of this Agreement by Debtor, (B) the perfection of such security interest (to the extent such security interest can be perfected by filing under the UCC, the granting of control (to the extent required hereunder, or (C) the exercise by the Secured Party of its rights and remedies provided for in this Agreement.

(g) <u>Contracts; Agreements; Licenses</u>. Debtor has no contracts, agreements or licenses which are non-assignable by their terms or as a matter of law, or which prevent the granting of a security interest therein.

(h) <u>Equipment and Inventory</u>. With respect to any Equipment and/or Inventory of Debtor, Debtor has exclusive possession and control of such Equipment and Inventory of such Debtor. No material Inventory is held by an Debtor pursuant to consignment, sale or return, sale on approval or similar arrangement. The Equipment of each Debtor that is material to its business is in normal operating condition and repair, ordinary wear and tear alone excepted (subject to casualty events), and is suitable for the uses to which it is customarily put in the conduct of such Debtor's business.

(i) <u>Exercising of Rights</u>. The exercise by Secured Party of its rights and remedies hereunder will not violate any law or governmental regulation or any material contractual restriction binding on or affecting an Debtor or any of its Property.

4. <u>Covenants</u>. Debtor covenants that until such time as the Secured Obligations have been satisfied in full and terminated, Debtor shall:

(a) <u>Instruments/Chattel Paper/</u>. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Tangible Chattel Paper, or if any property constituting Collateral shall be stored or shipped subject to a Document, ensure that such Instrument, Tangible Chattel Paper or Document is either in the possession of Debtor (or the applicable carrier, forwarder or other person entitled thereto) at all times or, if requested by the Secured Party to perfect its security interest in such Collateral (and such possession does not interfere with the shipment or storage of goods), is delivered to the Secured Party duly indorsed in a manner satisfactory to the Secured Party. Debtor shall ensure that any Collateral consisting of Tangible Chattel Paper is marked with a legend acceptable to the Secured Party indicating the Secured Party's security interest in such Tangible Chattel Paper. It is hereby specifically understood and agreed that an Debtor may from time to time hereafter deliver additional certificates and/or instruments to the Secured Party as collateral security for

4

the Secured Obligations. Upon delivery to the Secured Party such additional certificates and/or instruments shall be deemed to be part of the Collateral of such Debtor and shall be subject to the terms of this Agreement.

(i) Execute and deliver to the Secured Party all agreements, assignments, instruments or other documents as reasonably requested by the Secured Party for the purpose of obtaining and maintaining Control with respect to any Collateral consisting of (A) Deposit Accounts, (B) Investment Property, (C) Letter-of-Credit Rights (provided that no Debtor shall be required to obtain the consent of the issuer of the applicable Letter of Credit) and (D) Electronic Chattel Paper, including, without limitation, any Deposit Account Control Agreements.

(b) <u>Change in Corporate Structure or Location</u>. Not, without providing 30 days prior written notice to the Secured Party and without filing such amendments to any previously filed financing statements as the Secured Party may require, change its registered legal name, be party to a merger, consolidation or other change in structure or use any tradename.

(c) <u>Filing of Financing Statements, Notices, etc</u>. Authorize the Secured Party to prepare and file such financing statements (including continuation statements) or amendments thereof or supplements thereto or other instruments as the Secured Party may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC (including authorization to describe the collateral as "all personal property" or "all assets"). Each Debtor shall also execute and deliver to the Secured Party such agreements, assignments or instruments (including affidavits, notices, reaffirmations and amendments and restatements of existing documents, as the Secured Party may reasonably request) and do all such other things as the Secured Party may reasonably deem necessary or appropriate (i) to assure to the Secured Party its security interests hereunder are perfected and maintained, including such financing statements (including continuation statements) or amendments thereof or supplements thereto or other instruments as the Secured Party may from time to time reasonably request in order to perfect and maintain the security interest granted hereunder in accordance with the UCC, (ii) to consummate the transactions contemplated hereby and (iii) to otherwise protect and assure the Secured Party of its rights and interests hereunder. To that end, each Debtor agrees that the Secured Party may file one or more financing statements disclosing its security interest in the applicable Collateral of such Debtor without, to the extent permitted by law, such Debtor's signature thereon, and further each Debtor also hereby irrevocably makes, constitutes and appoints Secured Party, its nominee or any other person whom Secured Party may designate, as such Debtor's attorney in fact with full power and for the limited purpose to sign in the name of such Debtor any such financing statements, or amendments and supplements to financing statements, renewal financing statements, notices or any similar documents which in Secured Party 's reasonable discretion would be necessary, appropriate or convenient in order to perfect and maintain perfection of the security interests granted hereunder, such power, being coupled with an interest, being and remaining irrevocable until such time as the Secured Obligations have been satisfied in full and terminated. Each Debtor hereby agrees that Secured Party is authorized to file any such financing statement without notice thereof to such Debtor wherever Secured Party may in its sole discretion desire to file the same. In the event for any reason the law of any jurisdiction other than Florida becomes or is applicable to the Collateral of any Debtor or any part thereof, or to any of the Secured

5

Obligations, such Debtor agrees to execute and deliver all such instruments and to do all such other things as Secured Party in its sole discretion reasonably deems necessary or appropriate to preserve, protect and enforce the security interests of Secured Party under the law of such other jurisdiction (and, if an Debtor shall fail to do so promptly upon the request of Secured Party, then Secured Party may execute any and all such requested documents on behalf of such Debtor pursuant to the power of attorney granted hereinabove). Each Debtor agrees to mark its books and records to reflect the security interest of the Secured Party in the Collateral.

    (d)  Deposit Accounts.

    (i)  Debtor (A) shall maintain Deposit Accounts only with banks that have entered into a Deposit Account Control Agreement (each such bank, a "Depositary Bank") and (B) shall deposit in a Deposit Account subject to a Deposit Account Control Agreement all of its cash balances and the proceeds of all of the other Collateral received from time to time thereby other than cash balances necessary to pay salaries to the employees of such Debtor and to pay other administrative and operating expenses incurred by such Debtor in the ordinary course of business, in each case to the extent that such payments are not prohibited by the terms of the Lease Agreement.

    (ii)  Each of the Deposit Accounts shall be subject to applicable Laws (including, without limitation, such applicable regulations of the Board of Governors of the Federal Reserve System and of any other appropriate banking authority or Governmental Authority) as are in effect from time to time.

    (iii)  So long as no Default under this Agreement or the Lease Agreement shall have occurred and be continuing or would occur as a result thereof, Debtor may withdraw, and the Secured Party hereby authorizes Debtor and the Depositary Banks to have paid and released to any Person designated by such Debtor, any amounts on deposit in their Deposit Accounts for the conduct of the business of such Debtor in the ordinary.

    (e)  <u>Defense of Title</u>.  Warrant and defend title to and ownership of the Collateral of such Debtor at its own expense against the claims and demands of all other parties claiming an interest therein, keep the Collateral free from all Liens, and not sell, exchange, transfer, assign, lease or otherwise dispose of the Collateral of such Debtor or any interest therein.

    (f)  <u>Control</u>.  Execute and deliver to the Secured Party all agreements, assignments, instruments or other documents as reasonably requested by the Secured Party for the purpose of obtaining and maintaining Control with respect to the Control Collateral including, without limitation, any Deposit Account Control Agreements.

    (g)  <u>Collateral Held by Warehouseman, Bailee, etc</u>.  If any material Collateral is at any time in the possession or control of a warehouseman, bailee or any agent or processor of such Debtor and the Secured Party so requests (i) notify such Person in writing of Secured Party's security interest therein, (ii) instruct such Person to hold all such Collateral for Secured Party's account and subject to Secured Party's instructions and (iii) use commercially reasonable

best efforts to obtain a written acknowledgment from such Person that it is holding such Collateral for the benefit of Secured Party.

(h) <u>Treatment of Accounts</u>. Not grant or extend the time for payment of any Account, or compromise or settle any Account for less than the full amount thereof, or release any person or property, in whole or in part, from payment thereof, or allow any credit or discount thereon, other than as normal and customary in the ordinary course of an Debtor's business.

(i) <u>Books and Records</u>. Mark its books and records to reflect the security interests granted to the Secured Party.

(j) <u>Nature of Collateral</u>. At all times maintain the Collateral as personal property and not affix any of the Collateral to any real property in a manner which would change its nature from personal property to real property or a Fixture to real property, unless the Secured Party shall have a perfected Lien on such Fixture or real property.

(k) <u>Insurance</u>. Insure, repair and replace the Collateral of such Debtor. All insurance proceeds paid in connection with any insurance providing coverage with respect to any Collateral shall be subject to the security interest of the Secured Party hereunder.

(l) <u>Amendments</u>. Not make or consent to any amendment or other modification or waiver with respect to any of the Collateral of such Debtor or enter into any agreement or allow to exist any restriction with respect to any of the Collateral of such Debtor.

5. <u>Advances by Secured Party</u>. On failure of any Debtor to perform any of the covenants and agreements contained herein after notice from the Secured Party, the Secured Party may, at its sole option and in its sole discretion, perform the same and in so doing may expend such sums as the Secured Party may reasonably deem advisable in the performance thereof, including, without limitation, the payment of any insurance premiums, the payment of any taxes, a payment to obtain a release of a Lien or potential Lien, expenditures made in defending against any adverse claim and all other expenditures which the Secured Party may make for the protection of the security hereof or which may be compelled to make by operation of law. All such sums and amounts so expended shall be repayable by the Debtor promptly upon timely notice thereof and demand therefor, shall constitute additional Secured Obligations and shall bear interest from the date said amounts are expended at the highest lawful rate. No such performance of any covenant or agreement by the Secured Party on behalf of any Debtor, and no such advance or expenditure therefor, shall relieve the Debtor of any Default or Event of Default. The Secured Party may make any payment hereby authorized in accordance with any bill, statement or estimate procured from the appropriate public office or holder of the claim to be discharged without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax assessment, sale, forfeiture, tax lien, title or claim except to the extent such payment is being contested in good faith by an Debtor in appropriate proceedings and against which adequate reserves are being maintained in accordance with GAAP.

6. <u>Remedies</u>.

(a) <u>General Remedies</u>. Upon the occurrence of an Event of Default and during continuation thereof, Secured Party shall have, in addition to the rights and remedies

provided herein, in the Lease Agreement or under applicable Laws (including, but not limited to, levy of attachment, garnishment and the rights and remedies set forth in the UCC), the rights and remedies of a secured party under the UCC (regardless of whether the UCC is the law of the jurisdiction where the rights and remedies are asserted and regardless of whether the UCC applies to the affected Collateral), and further, the Secured Party may, with or without judicial process or the aid and assistance of others, (i) enter on any premises on which any of the Collateral may be located and, without resistance or interference by the Debtor, take possession of the Collateral, (ii) dispose of any Collateral on any such premises, (iii) require the Debtor to assemble and make available to the Secured Party at the expense of the Debtor any Collateral at any place and time designated by the Secured Party which is reasonably convenient to both parties, (iv) remove any Collateral from any such premises for the purpose of effecting sale or other disposition thereof, and/or (v) upon ten (10) days notice to the Debtor (unless the Secured Party reasonably believes preservation of the Collateral or the value thereof requires shorter notice or no notice), without demand and without advertisement, hearing or process of law, all of which the Debtor hereby waives to the fullest extent permitted by law, at any place and time or times, sell and deliver any or all Collateral held by or for it at public or private sale, at any exchange or broker's board or elsewhere, by one or more contracts, in one or more parcels, for cash, upon credit or otherwise, at such prices and upon such terms as the Secured Party deems advisable, in its sole discretion (subject to any and all mandatory legal requirements). Debtor acknowledges that any such private sale may be at prices and on terms less favorable to the seller than the prices and other terms which might have been obtained at a public sale and, notwithstanding the foregoing, agrees that such private sale shall be deemed to have been made in a commercially reasonable manner. To the extent the rights of notice cannot be legally waived hereunder, each Debtor agrees that any requirement of notice shall be met if such notice is personally served on, sent by mail, postage prepaid or sent by nationally recognized overnight delivery service to the Debtor in accordance with the notice provisions of the Lease Agreement at least 10 days before the time of sale or other event giving rise to the requirement of such notice. The Secured Party shall not be obligated to make any sale or other disposition of the Collateral regardless of notice having been given. To the extent permitted by law, any Secured Party may be a purchaser at any such sale. To the extent permitted by applicable law, the Debtor hereby waives, upon an Event of Default and during the continuance thereof, all of its rights of redemption with respect to any such sale. Subject to the provisions of applicable law, the Secured Party may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice to Persons other than the Debtor, to the extent permitted by law, be made at the time and place to which the sale was postponed, or the Secured Party may further postpone such sale by announcement made at such time and place.

      (b)    <u>Remedies Relating to Accounts</u>.

      (i)    During the continuation of an Event of Default, whether or not the Secured Party has exercised any or all of their rights and remedies hereunder, (A) each Debtor will promptly, upon written request of the Secured Party, instruct all account Debtor to remit all payments in respect of the accounts to a mailing location selected by such Secured Party and (B) after having provided written notice to the Debtor of its intent to exercise such rights, the Secured Party or its designee may notify any Debtor's customers and account Debtor that the accounts of such Debtor have been assigned to the Secured Party or of the Secured Party's

8

security interest therein, and may (either in its own name or in the name of an Debtor or both) demand, collect (including, without limitation, by way of a lockbox arrangement), receive, take receipt for, sell, sue for, compound, settle, compromise and give acquittance for any and all amounts due or to become due on accounts, and, in the Secured Party's discretion, file any claim or take any other action or proceeding to protect and realize upon the security interest of the Secured Party, in the Accounts. Each Debtor acknowledges and agrees that the Proceeds of its Accounts remitted to or on behalf of the Secured Party in accordance with the provisions hereof shall be solely for the Secured Party's own convenience and that such Debtor shall not have any right, title or interest in such Accounts or in any such other amounts except as expressly provided herein. The Secured Party shall have no liability or responsibility to any Debtor for acceptance of a check, draft or other order for payment of money bearing the legend "payment in full" or words of similar import or any other restrictive legend or endorsement or be responsible for determining the correctness of any remittance. Furthermore, during the continuation of an Event of Default, (1) the Secured Party shall have the right, but not the obligation, to make test verifications of the Accounts in any manner and through any medium that they reasonably consider advisable, and the Debtor shall furnish all such assistance and information as the Secured Party may require in connection with such test verifications, (2) upon the Secured Party's request and at the expense of the Debtor, the Debtor shall cause independent public accountants or others satisfactory to the Secured Party to furnish to the Secured Party reports showing reconciliations, aging and test verifications of, and trial balances for, the Accounts and (3) the Secured Party in its own name or in the name of others may communicate with account Debtor on the Accounts to verify with them to the Secured Party's satisfaction the existence, amount and terms of any Accounts.

(ii) Anything herein to the contrary notwithstanding, Debtor shall remain liable under each of the Accounts to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with the terms of any agreement giving rise to each such Account. Neither the Secured Party nor any Secured Party shall have any obligation or liability under any Account (or any agreement giving rise thereto) by reason of or arising out of this Agreement or the receipt by the Secured Party or any Secured Party of any payment relating to such Account pursuant hereto, nor shall the Secured Party or any Secured Party be obligated in any manner to perform any of the obligations of an Debtor under or pursuant to any account (or any agreement giving rise thereto), to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any account (or any agreement giving rise thereto), to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

(c) Access. In addition to the rights and remedies hereunder, upon the occurrence of an Event of Default and during the continuance thereof, but subject to the terms hereof, the Secured Party shall have the right to enter and remain upon the various premises of the Debtor without cost or charge to the Secured Party, and use the same, together with materials, supplies, books and records of the Debtor for the purpose of collecting and liquidating the Collateral, or for preparing for sale and conducting the sale of the Collateral, whether by foreclosure, auction or otherwise. In addition, the Secured Party may remove Collateral, or any

part thereof, from such premises and/or any records with respect thereto, in order to effectively collect or liquidate such Collateral.

(d) <u>Nonexclusive Nature of Remedies</u>. Failure by the Secured Party to exercise any right, remedy or option under this Agreement, any other Loan Document or as provided by law, or any delay by the Secured Party in exercising the same, shall not operate as a waiver of any such right, remedy or option. No waiver hereunder shall be effective unless it is in writing, signed by the party against whom such waiver is sought to be enforced and then only to the extent specifically stated, which in the case of the Secured Party shall only be granted as provided herein. To the extent permitted by law, neither the Secured Party, nor any party acting as attorney for the Secured Party, shall be liable hereunder for any acts or omissions or for any error of judgment or mistake of fact or law other than their gross negligence or willful misconduct hereunder. The rights and remedies of the Secured Party under this Agreement shall be cumulative and not exclusive of any other right or remedy which the Secured Party.

(e) <u>Retention of Collateral</u>. The Secured Party may, in compliance with Sections 9-620 and 9-621 of the UCC or otherwise complying with the requirements of applicable law of the relevant jurisdiction, accept or retain the Collateral in satisfaction of the Secured Obligations. Unless and until the Secured Party has provided such notices, however, the Secured Party shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

(f) <u>Deficiency</u>. In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which the Secured Party are legally entitled, the Debtor shall be liable for the deficiency, together with interest thereon at the Default Rate, together with the costs of collection and the reasonable fees of any attorneys employed by the Secured Party to collect such deficiency. Any surplus remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the Debtor or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

(g) <u>Indemnification</u>. Each Debtor hereby agrees to indemnify the Secured Party with respect to the actions taken by the Secured Party in accordance with the foregoing. The foregoing indemnity shall survive the repayment of the Secured Obligations.

7. <u>Rights of the Secured Party</u>.

(a) <u>Power of Attorney</u>. In addition to other powers of attorney contained herein, each Debtor hereby designates and appoints the Secured Party, and their designees or agents, as attorney-in-fact of such Debtor, irrevocably and with power of substitution, with authority to take any or all of the following actions in connection with the Collateral of such Debtor upon the occurrence and during the continuance of an Event of Default:

(i) to demand, collect, settle, compromise, adjust, give discharges and releases, all as the Secured Party may reasonably determine;

(ii) to commence and prosecute any actions at any court for the purposes of collecting any Collateral and enforcing any other right in respect thereof;

   (iii) to defend, settle or compromise any action brought and, in connection therewith, give such discharge or release as the Secured Party may deem reasonably appropriate;

   (iv) to receive, open and dispose of mail addressed to an Debtor and endorse checks, notes, drafts, acceptances, money orders, bills of lading, warehouse receipts or other instruments or documents evidencing payment, shipment or storage of the goods giving rise to the Collateral of such Debtor on behalf of and in the name of such Debtor, or securing, or relating to such Collateral;

   (v) to sell, assign, transfer, make any agreement in respect of, or otherwise deal with or exercise rights in respect of, any Collateral or the goods or services which have given rise thereto, as fully and completely as though the Secured Party was the absolute owner thereof for all purposes;

   (vi) to adjust and settle claims under any insurance policy relating thereto;

   (vii) to execute and deliver all assignments, conveyances, statements, financing statements, renewal financing statements, security agreements, affidavits, notices and other agreements, instruments and documents that the Secured Party may determine necessary in order to perfect and maintain the security interests and liens granted in this Agreement and in order to fully consummate all of the transactions contemplated therein;

   (viii) to institute any foreclosure proceedings in respect of the Collateral that the Secured Party may deem appropriate;

   (ix) to sign and endorse any drafts, assignments, proxies, stock powers, verifications, notices and other documents relating to the Collateral;

   (x) to pay or discharge taxes, liens, security interests or other encumbrances levied or placed on or threatened against the Collateral;

   (xi) to direct any parties liable for any payment in connection with any of the Collateral to make payment of any and all monies due and to become due thereunder directly to the Secured Party or as the Secured Party shall direct;

   (xii) to receive payment of and receipt for any and all monies, claims, and other amounts due and to become due at any time in respect of or arising out of any Collateral; and

   (xiii) to do and perform all such other acts and things as the Secured Party may reasonably deem to be necessary, proper or convenient in connection with the Collateral.

 This power of attorney is a power coupled with an interest and shall be irrevocable until such time as the Secured Obligations have been satisfied in full and terminated. The Secured Party shall be under no duty to exercise or withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to the Secured Party in this Agreement, and shall not be liable for any failure to do so or any delay in doing so. The Secured Party shall not be liable for any act or omission or for any error of judgment or any mistake of fact or law in its individual capacity or their capacity as attorney-in-fact except acts or omissions resulting

11

from their gross negligence or willful misconduct. This power of attorney is conferred on the Secured Party solely to protect, preserve and realize upon the security interests of the Secured Party in the Collateral.

(b) <u>Performance by the Secured Party of Obligations</u>. If any Debtor fails to perform any agreement or obligation contained herein, the Secured Party itself may perform, or cause performance of, such agreement or obligation, and the expenses of the Secured Party incurred in connection therewith shall be payable by the Debtor.

(c) <u>Assignment by the Secured Party</u>. The Secured Party may from time to time assign the applicable Secured Obligations to a successor Secured Party and such successor shall be entitled to all of the rights and remedies of a Secured Party under this Agreement in relation thereto.

(d) <u>The Secured Party's Duty of Care</u>. Other than the exercise of reasonable care to assure the safe custody of the Collateral while being held by the Secured Party hereunder, the Secured Party shall have no duty or liability to preserve rights pertaining thereto, it being understood and agreed that the Debtor shall be responsible for preservation of all rights in the Collateral, and the Secured Party shall be relieved of all responsibility for the Collateral upon surrendering it or tendering the surrender of it to the Debtor. The Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Secured Party accords its own property, which shall be no less than the treatment employed by a reasonable and prudent agent in the industry, it being understood that the Secured Party shall not have responsibility for (i) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relating to any Collateral, whether or not the Secured Party has or is deemed to have knowledge of such matters, or (ii) taking any steps to clean, repair or otherwise prepare the Collateral for sale.

(e) <u>Liability with Respect to Accounts</u>. The Secured Party shall not have any obligation or liability under any Account (or any agreement giving rise thereto) by reason of or arising out of this Agreement or the receipt by the Secured Party of any payment relating to such Account pursuant hereto, nor shall the Secured Party be obligated in any manner to perform any of the obligations of an Debtor under or pursuant to any Account (or any agreement giving rise thereto), to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any Account (or any agreement giving rise thereto), to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

8. <u>Application of Proceeds</u>. Any payments in respect of the Secured Obligations and any proceeds of the Collateral, when received by the Secured Party in cash or its equivalent, will be applied in reduction of the Secured Obligations.

TAMP_718555.3

9. <u>Continuing Agreement</u>.

(a) This Agreement shall remain in full force and effect until such time as the Secured Obligations have been satisfied in full and terminated, at which time this Agreement shall be automatically terminated and the Secured Party shall, upon the request and at the expense of the Debtor, promptly forthwith release all of their liens and security interests hereunder and shall execute and deliver all UCC termination statements and/or other documents reasonably requested by the Debtor evidencing such termination.

(b) This Agreement shall continue to be effective or be automatically reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Secured Obligations is rescinded or must otherwise be restored or returned by the Secured Party as a preference, fraudulent conveyance or otherwise under any bankruptcy, insolvency or similar law, all as though such payment had not been made; provided that in the event payment of all or any part of the Secured Obligations is rescinded or must be restored or returned, all reasonable costs and expenses (including without limitation any reasonable legal fees and disbursements) incurred by the Secured Party or any Secured Party in defending and enforcing such reinstatement shall be deemed to be included as a part of the Secured Obligations.

10. <u>Amendments; Waivers; Modifications, etc</u>. This Agreement and the provisions hereof may not be amended, waived, modified, changed, discharged or terminated except in writing.

11. <u>Successors in Interest</u>. This Agreement shall be binding upon each Debtor, its successors and assigns and shall inure, together with the rights and remedies of the Secured Party hereunder, to the benefit of the Secured Party and its successors and permitted assigns.

12. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which where so executed and delivered shall be an original, but all of which shall constitute one and the same instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

13. <u>Headings</u>. The headings of the sections hereof are provided for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

14. <u>Governing Law</u>. This Agreement and the legality, validity of the performance of the terms hereof shall be governed by and enforced, determined and construed in all respects in accordance with the laws of the State of Florida.

15. <u>Severability</u>. If any provision of this Agreement is determined to be illegal, invalid or unenforceable, such provision shall be fully severable and the remaining provisions shall remain in full force and effect and shall be construed without giving effect to the illegal, invalid or unenforceable provisions.

16. <u>Entirety</u>. This Agreement and the other Lease Agreement represent the entire agreement of the parties hereto and thereto, and supersede all prior agreements and understandings, oral or written, if any, including any commitment letters or correspondence relating to the Lease Agreement or the transactions contemplated herein and therein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

DEBTOR:

Digital TV of Orlando, LLC, a Florida limited liability company

By: _____
Print Name: _____John Sain_____
Title: _____President_____
Date: _____Nov. 19, 2007_____

SECURED PARTY:

Oakville Tower Holdings, LLC, a Florida limited liability company

By: _____
Print Name: _____Dale A. West_____
Title: _____Vice President_____
Date: _____11/21/07_____

TAMP_718555.3